UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAN ELWELL, Acting Administrator, Federal Aviation Administration, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:19-mc-00020-TWP-DLP ) |
| AASIF BADE, et al, | ) ) ) |
| Respondents. | ) |

**REPORT AND RECOMMENDATION**

This matter comes before the Court on the Federal Aviation Administration's ("FAA") Petition for Enforcement of Administrative Subpoenas (Dkt. 1). For the reasons set forth below, the Magistrate Judge recommends that the Petition be **GRANTED**.

**I.     Background**

Since approximately 2008, the Respondents[1] have collectively operated AirXL, LLC (hereinafter "AirXL"), a private air carrier service that uses seven Cessna Citations jet aircrafts.[2] In 2013, the FAA received complaints about AirXL's operations and began investigating the Respondents for potential past and continuing violations of FAA regulations. Specifically, the FAA believed that the Respondents had failed to obtain proper authorization for the air-carrier service

---

[1] The Respondents include Aasif Bade; Brad Cable; Trevor Gray; Benjamin Evans; Freddie McClure; John Roehm; Gary Sherman; Stephen Sterrett; Brian Tuohy; AirXL, LLC; Excel 2, LLC; Excel 3, LLC; Excel 4, LLC; CJ 1, LLC; Indy Bravo, LLC; and Bravo II, LLC.
[2] Cessna Citations are small jet aircrafts designed to transport small groups of passengers. See generally https://en.wikipedia.org/wiki/Cessna_Citation_family (summarizing the basic characteristics of the Citation family of jets).

1

and thereby avoided mandatory safety requirements. [Dkt. 4 at 2.]

On March 23, 2014, the FAA issued its first set of administrative subpoenas to various individuals and LLCs regarding AirXL's operations (the "2014 Subpoenas"). [Dkt. 12 at 2.] The Respondents jointly responded to these subpoenas and ultimately produced over 2,000 pages of documents. [Dkt. 12 at 2-3.]

On December 14, 2017, the FAA issued another set of administrative subpoenas to various individuals and LLCs it believed might have information about AirXL's operations (the "2017 Subpoenas"). [Dkt. 4 at 3.] Some recipients of the 2017 Subpoenas produced aircraft flight logs, flight summaries, aircraft lease agreements, pilot payrolls, and operating invoices in response. [*Id.*] The FAA also took the depositions of six individuals, but deposed none of the Respondents. [*Id.*]

On August 9, 2018, the FAA served a third set of administrative subpoenas to the Respondents (the "2018 Subpoenas"). The 2018 Subpoenas "required production of all documents, from January 1, 2015 to the present, in Respondents' possession related to their respective agreements associated with their use, ownership, and/or leasehold interest in the Cessna Citations under investigation." [Dkt. 4 at 5.] On August 31, 2018, the Respondents objected to the 2018 Subpoenas in their entirety and, to date, have not produced any documents in response.

The FAA, by its Acting Commissioner Dan Elwell, filed a Petition for Enforcement of Administrative Subpoenas on February 27, 2019, requesting that this Court enforce the 2018 Subpoenas. [Dkt. 1.] On April 18, 2019, the Respondents

2

filed a Motion to Quash Administrative Subpoenas [Dkt. 12], asserting in the opening paragraph that their motion serves as a response in opposition to the FAA's Petition. Because this Motion was filed on the deadline for a response and the arguments are in direct response to the FAA's Petition, the Court should treat the Respondents' Motion as a response brief.[3] The Petitioner filed a reply brief on April 25, 2019.

The Respondents attempted to file a reply brief in support of their Motion to Quash Administrative Subpoenas on May 2, 2019, but because the Undersigned has deemed that the Motion to Quash is a response brief, the reply is more appropriately considered a Surreply to the FAA's Petition. Because the Respondents did not seek leave of court to file such a surreply, the Court will not consider it when ruling on the FAA's Petition. Upon request of the Respondents, the parties presented oral argument before the Undersigned on June 26, 2019.

## II. Legal Standard

A motion to enforce a subpoena is generally viewed as a non-dispositive matter. *E.E.O.C. v. Trinity Health Corp.,* 107 F. Supp. 3d 934, 936 (N.D. Ind. 2015). Where there is no pending underlying action before a court, however, the order on whether to enforce the subpoena would be dispositive of the entire matter. *Id*; *E.E.O.C. v. Dolgencorp.,* No. 07 C 6672 (N.D. Ill. Apr. 15, 2008) (citing *N.L.R.B. v. G. Rabine & Sons, Inc.,* No. 00 C 5965, 2001 WL 1772333, at *3 (N.D. Ill. Sept. 10,

---

[3] Additionally, under S.D. Ind. Local Rule 7-1(a), a "motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court." The Court did not order the Respondents to file a Motion to Quash within their response to the FAA's Petition.

2001). Therefore, the Undersigned treats the present motion as dispositive and submits this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Subpoena enforcement proceedings are designed to be summary in nature. *E.E.O.C. v. Aerotek, Inc.*, 815 F.3d 328, 333 (7th Cir. 2016); *E.E.O.C. v. United Airlines, Inc.*, 287 F.3d 643, 649 (7th Cir. 2014). A district court must enforce an administrative subpoena if (a) the matter under investigation is within the authority of the issuing agency, (b) the information sought is reasonably relevant to that inquiry, and (c) the requests are not too indefinite. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950) (addressing a court's limited role in the enforcement of an administrative subpoena); *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 233 F.3d 981, 986-87 (7th Cir. 2000) (discussing court's exercise of "only limited review" in deciding enforcement of agency subpoenas). Under this familiar formulation, known as the *Morton Salt* test, disclosure may be restricted, however, where it would impose an unreasonable or undue burden on the party from whom production is sought. *Aerotek*, 815 F.3d at 333. "[C]ourt assessments of whether disclosure would be burdensome and of what restrictions might be appropriate are decisions within the sound discretion of the trial court." *Dow Chem. Co. v. Allen*, 672 F.2d 1262, 1267 (7th Cir. 1982).

**III.   Analysis**

The FAA's 2018 Subpoenas request information as follows:[4]

| **From Respondents Bade, Gray, Evans, McClure, Roehm, Sterrett, Tuohy, and Evans, Sherman:** |
|---|
| **For the period January 1, 2015 to the present:** Any and all records, in your custody and control including but not limited to the following; emails, correspondence, notes, reports, logbooks, manuals, diaries, documents, and/or photographs, including all written, printed, typed, computerized, programmed or graphic documents of any kind or nature related in any manner to:<br><br>1. Pilot Services Agreement, or any such similar agreement, pertaining to your use of N170SD; N884B; N525LE; N80X; N469DE, N550HJ, N562PC, and/or NI7ED.<br><br>2. LLC Interest Purchase Agreement and/or LLC Interest Purchase Agreement and Amendment to Operating Agreement, or any such similar agreement, pertaining to your use of N170SD; N884B; N525LE; N80X; N469DE; N550HJ; N562PC, and/or N17ED. |
| **From Respondent Cable:** |
| **For the period January 1, 2015 to the present:** Any and all records, in your custody and control including but not limited to the following; emails, correspondence, notes, reports, logbooks, manuals, diaries, documents, and/or photographs, including all written, printed, typed, computerized, programmed or graphic documents of any kind or nature related in any manner to:<br><br>1. Master Interchange Lease Agreement, or any such similar agreements, related to the use of N170SD; N884B; N525LE; N80X; N469DE, N550HJ, N562PC, and/or NI7ED. |
| **From Respondents AirXL, LLC; Excel 2, LLC; Excel 3, LLC; Excel 4, LLC; CJ 1, LLC; Indy Bravo, LLC; Bravo II, LLC:** |

---

[4] The following chart is taken directly from the Petitioner's Brief (Dkt. 4), because it outlines the information requested from each party in the 2018 Subpoenas in a more efficient manner than the Court could achieve by making a separate chart.

> **For the period January 1, 2015 to the present:**
> Any and all records, in your custody and control including but not limited to the following; emails, correspondence, notes, reports, logbooks, manuals, diaries, documents, and/or photographs, including all written, printed, typed, computerized, programmed or graphic documents of any kind or nature related in any manner to:
>
> 1. Master Interchange Lease Agreement, or any such similar agreements, related to the use of N170SD; N884B; N525LE; N80X; N469DE, N550HJ, N562PC, and/or NI7ED.
>
> 2. Operating Agreements, or any such similar agreements, related to the use of N170SD; N884B; N525LE; N80X; N469DE, N550HJ, N562PC, and/or N17ED.

The FAA argues that this Court should enforce the 2018 Subpoenas because they pass the *Morton Salt* test, namely that the requests are within the authority of the agency, not too indefinite, and reasonably relevant to the investigation, and that they are not unreasonable or unduly burdensome. The Respondents assert that the 2018 Subpoenas fail the *Morton Salt* test and argue generally that the requests are burdensome, duplicative, and serve an illegitimate purpose. The Court will address each element of the *Morton Salt* test and then consider whether the requests are unreasonable or unduly burdensome.

### A. The 2018 Subpoenas are within the authority of the FAA.

The petitioner argues that the 2018 Subpoenas are squarely within the authority of the FAA as outlined in 49 U.S.C. § 46101. Pursuant to 49 U.S.C. § 46101(a), if the FAA receives a complaint from a person, it "shall investigate the complaint if a reasonable ground appears." 49 U.S.C. § 46101(a)(1). Additionally, the FAA may, on its own initiative, "conduct an investigation, if a reasonable

6

ground appears." 49 U.S.C. § 46101(a)(2). Under 49 U.S.C. § 46104, "[i]n conducting a hearing or investigation," the FAA may "subpoena witnesses and records related to a matter involved in the hearing or investigation," 49 U.S.C. § 46104(a)(1), and may bring a petition in federal court to enforce its subpoenas. 49 U.S.C. § 46104(b).

The Supreme Court has noted that administrative agencies like the FAA have broad "power[s] of inquisition" and a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest. *Morton Salt Co.*, 338 U.S. at 642–43, 652. Thus, the FAA may investigate a business entity "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Aerotek, Inc.*, 815 F.3d at 333 (citing *Morton Salt Co.*, 338 U.S. at 642–43). The agency does not need to bring formal charges to justify its investigative authority. *See Id.*

The Petitioner argues that its investigation of the Respondents seeks information about whether AirXL has violated or is continuing to violate FAA safety regulations. The Respondents assert that the 2018 Subpoenas fall outside the scope of FAA authority because the investigation has surpassed the "normative deadline" established by the FAA's own guidelines, the "stale complaint rule" bars any certificate enforcement proceedings, and the statute of limitations prevents any civil enforcement action against AirXL.

The "normative deadline" identified by Respondents comes from FAA Order 2150.3B, Chapter 4, which states, "[o]n average, FAA investigative personnel in field offices [should] strive to complete an investigation . . . within 75 days of the

date they know of the apparent violation." FAA Order 2150.3B, Ch. 4, Sec. 4(e).[5]

However, the Introduction to Order 2150.3B states in no equivocal terms that "[t]his order does not create any right or benefit, substantive or procedural, enforceable at law by any party against the FAA, its officers, or its employees." FAA Order 2150.3B, Ch. 1, Sec. 1. The introduction to Chapter 4 reiterates this by stating: "[t]his chapter provides general guidelines for conducting an investigation. These guidelines are not all inclusive and are not a substitute for common sense and good judgment. Each investigation is tailored to the specific apparent or potential violation." Thus, the 75-day "normative deadline" does not affect the FAA's authority to bring this Petition, and Respondents' omission of the Order's self-limiting language from their briefs and at oral argument is concerning.

Respondents' reliance on the "stale complaint rule" is misplaced. This rule is also found in FAA Order 2150.3B, Chapter 4, which states:

> an FAA complaint (order) may generally be dismissed if the offenses alleged occurred more than six months prior to the Administrator's advising a respondent of the reasons for the proposed action. Advising the respondent refers to the respondent's receipt of the legal document sent by FAA legal counsel proposing the certificate action.

FAA Order 2150.3B, Ch. 4, Sec. 5. However, this rule is subject to the same limiting language found in the introduction of Order 2150.3B and, moreover, only applies to "[c]ases involving the suspension or revocation of airman, type, production,

---

[5] FAA Order 2150.3B was superseded by FAA Order 2150.3C in September 2018, but Respondents assert that "for the period of time relevant to this action FAA Order 2150.3B was the operative version of FAA Policy." [Dkt. 12 at 8, n. 2.] However, later in Respondents' Arguments they rely on FAA Order 2150.3C without explaining why FAA Order 2150.3B is no longer relevant. The Court will discuss FAA Order 2150.3B here.

airworthiness, air carrier operating, airport operating, air agency and air navigation facility certificates." The FAA has represented that its investigation does not seek the revocation or suspension of certificates because Respondents do not hold any of these certificates. Thus, the stale complaint rule does not apply here.

The Respondents argue finally that the FAA lacks authority to continue its investigation into AirXL because the statute of limitations for bringing any enforcement action has "long since lapsed." [Dkt. 12 at 9.] They contend that FAA Order 2150.3B establishes a five-year statute of limitations on any civil enforcement actions, and because this investigation has progressed into its sixth year, the FAA is barred from bring any civil enforcement action. The FAA asserts in its reply that the Respondents are "engaged in a *continuing* violation that accrues anew every day they are out of compliance," thereby continually extending the statute of limitations. [Dkt. 13 at 8.]

As an initial matter, whether the statute of limitations has run on the FAA's ability to file a civil enforcement action has no bearing on whether the FAA may continue to investigate possible violations. The FAA may conduct an investigation to assure itself that its regulations are being followed, even if it ultimately determines that civil enforcement or formal charges are not warranted. Moreover, the FAA's contention that the Respondents are engaged in a continuing violation of its safety regulations renders the Respondents' argument meritless.

The FAA received complaints about the Respondents and opened an investigation into AirXL and the other Respondents. Under 49 U.S.C. § 46101, the

FAA has the authority to issue subpoenas and take testimony in accordance with its investigation. Therefore, the Undersigned finds that the FAA's investigation into AirXL falls within the agency's authority. The FAA has broad powers to investigate the operations of AirXL and the Respondents have not demonstrated that the FAA has surpassed the boundaries of those powers.

### B. The 2018 Subpoenas are not too indefinite.

The Petitioner argues that the 2018 Subpoenas are not too indefinite, insofar as they clearly define the information they seek and are more narrowly tailored than the two prior rounds of administrative subpoenas. The Respondents do not directly address this step of the *Morton Salt* test. For the sake of completeness, however, the Undersigned will.

When analyzing whether an administrative subpoena is too indefinite, the Court should look to whether the subpoenas "list[ed] in sufficient detail the information requested." *E.E.O.C. v. Quad/Graphics, Inc.*, 868 F. Supp. 1078, 1081 (E.D. Wis. 1994). In *United States v. Hill*, 319 F. Supp. 3d 44 (D.D.C. 2018), the court found that subpoenas issued by the Office of the Inspector General seeking the production of 3 devices and information generated on those devices were not too indefinite because the subpoenas sufficiently defined and limited the information sought. *Id.* at 48.

Here, the 2018 Subpoenas sufficiently identify, define, and limit the information sought. They seek information related to "Pilot Service Agreements," "LLC Interest Purchase Agreements," "Master Interchange Lease Agreements," and

"Operating Agreements." Moreover, the information requested is limited to the seven Cessna Citation planes under investigation and to the time period of "January 2015 to the present." The Court determines that the 2018 Subpoenas are not too indefinite.

### C. The information sought by the 2018 Subpoenas is reasonably relevant to the FAA's investigation.

The Petitioner argues that the 2018 Subpoenas are reasonably relevant to the FAA's investigation into AirXL's operations because they seek information about AirXL's business structure and the agreements associated with Respondents' use, ownership, and leasehold interests in the planes being investigated. The Respondents do not specifically challenge the relevance of the 2018 Subpoenas, but instead focus their brief on a fairness argument. The Respondents claim that the FAA has improperly restarted an investigation into AirXL without a legitimate purpose, thereby harassing the Respondents and disrupting their business.

Objections to the relevance of administrative subpoenas must be considered in the context of agencies' broad powers to investigate on suspicion that their regulations are being violated. *See Aerotek, Inc.*, 815 F.3d at 333. As mentioned above, the FAA may investigate violations so long as there are "reasonable grounds." 49 U.S.C. § 46101(a). Accordingly, the threshold for relevance of administrative subpoenas is relatively low. *Cf Aerotek, Inc.*, 815 F.3d at 333–34 (discussing the relevancy requirements for E.E.O.C. subpoenas and investigations). Other courts, relying on the Supreme Court, have articulated this standard as "'not plainly incompetent or irrelevant to any lawful purpose' of the [agency]." *F.T.C. v.*

11

*Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992) (quoting *FTC v. Texaco, Inc.,* 555 F.2d 862, 872, 873 n. 23 (D.C. Cir.) (en banc) (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509, (1943))). The Second Circuit goes as far as accepting the agency's appraisal of relevancy "so long as it is not obviously wrong." *In re McVane,* 44 F. 3d 1127, 1135 (2nd Cir. 1995). Courts, however, also have an obligation to make sure that agencies do not exceed their authority and must make sure requests have "not been made for an illegitimate purpose." *E.E.O.C. v. Quad/Graphics,* 63 F.3d 642, 645 (7th Cir. 1995).

The Respondents argue generally that the FAA issued the 2018 Subpoenas for an illegitimate purpose, namely to "investigate the [Respondents] into submission." As discussed above, however, neither FAA Order 2150.3B nor FAA Order 2150.3C limit the FAA's authority to conduct investigations. Even though the FAA has not completed its investigation within 75 days, a fact which may frustrate the Respondents, that does not make the 2018 Subpoenas irrelevant to the investigation or render the investigation itself illegitimate.

The standard for relevance of administrative subpoenas is exceedingly low and extremely deferential to the agency involved. The Respondents have failed to support their allegations of illegitimacy with any evidence. The 2018 Subpoenas, as outlined above, seek information "in Respondents' possession related to their respective agreements associated with their use, ownership, and/or leasehold interest in the Cessna Citations under investigation." That information is undoubtedly related to the FAA's investigation into whether the Respondents failed

12

to obtain proper authorization for their air carrier service. Accordingly, the 2018 Subpoenas are reasonably relevant to the FAA's investigation and thereby pass all three elements of the *Morton Salt* test.

D. **The 2018 Subpoenas are not unreasonable or unduly burdensome.**

Once the Court is satisfied that the administrative subpoenas are reasonably relevant to the agency investigation, not too indefinite, and part of an investigation within the agency's authority, the Court must address whether the requests are unreasonable or unduly burdensome. *Aerotek,* 815 F.3d at 334. The party resisting compliance with the subpoenas bears the burden of demonstrating unreasonable or undue burden, and "speculation is inadequate to establish undue burden." *Aerotek,* 815 F.3d at 334. To establish that the administrative subpoenas are excessively burdensome, the party resisting compliance "must show that compliance would threaten the normal operation of its business." *Id*; *accord Quad/Graphics*, 63 F.3d at 645. Here, the burden rests with the Respondents: "The burden of showing that the request is unreasonable is on the subpoenaed party ... (and) is not easily met where ... the agency inquiry is pursuant to a lawful purpose and the requested documents are relevant to that purpose." *Dow Chem.,* 572 F.2d at 1267 (alterations in original) (quoting *F.T.C. v. Texaco, Inc.,* 555 F.2d 862, 882 (D.C. Cir. 1977)).

Here, the Petitioner argues that these requests are not unreasonable or unduly burdensome because the 2018 Subpoenas are more narrowly tailored and seek a more limited number of existing business records and contracts than the two previous rounds of subpoenas and issued directly to the Respondents in this matter.

13

The Respondents argue in response that the 2018 Subpoenas are overly burdensome because AirXL has already produced over 3,000 pages of documents, a "white paper" explaining its operations, and the FAA has conducted at least six depositions concerning this investigation. Thus, the Respondents assert, the 2018 Subpoenas subject them to requests that are duplicative of previous production, the burden of additional expense, and an indefinite investigation. The FAA's reply informs the Court that the 2017 Subpoenas were only directed at some of the Respondents, the issues presented in the 2018 Subpoenas are narrower and request information that has not previously been requested from certain of the Respondents, and that none of the Respondents have yet been deposed.

During oral argument, it was noted that the Respondents provided the 2014 and 2017 copies of the Dry Lease Agreement, Pilot Services Agreement, and Master Interchange Lease. Because the Respondents were able to provide the copies of these particular documents, the Court finds it difficult to believe it would be unduly burdensome to produce copies of the documents from the remaining years. The Respondents do not support their argument with affidavits, documentation, or evidence[6]; rather, they base their response on speculation and conclusory allegations, both of which this Circuit has determined are not enough to establish an undue burden. Thus, the 2018 Subpoenas do not impose an unreasonable or undue burden on the Respondents.

---

[6] Any evidence that the Respondents sought to or did provide at oral argument cannot be considered. S.D. Ind. Local Rule 7-5(b) prohibits the introduction of additional evidence at oral argument.

14

### IV. Conclusion

The FAA's 2018 administrative subpoenas were issued pursuant to an investigation within the authority of the FAA, are reasonably relevant to that investigation, and are not too indefinite or overly burdensome. Accordingly, the Undersigned recommends that the FAA's Petition for Enforcement of Administrative Subpoenas (Dkt. 1) be **GRANTED**.

As noted above, the Respondents' Motion to Quash (Dkt. 12) should be deemed a response to the FAA's Petition, and not a separate motion. The Undersigned recommends that the Clerk's Office treat Dkt. 12 as a response to Dkt. 1.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. §636(b)(1). Failure to timely file objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

Date: 6/28/2019

*Doris L. Pryor*
Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

Timothy J. Maher
BARNES & THORNBURG
tim.maher@btlaw.com

Justin R. Olson
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
justin.olson2@usdoj.gov

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov