## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAN ELWELL, Acting Administrator, Federal Aviation Administration | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:19-mc-00020-TWP-DLP |
| v. | ) | |
| | ) | |
| AASIF BADE, BRAD CABLE, TREVOR GRAY, BENJAMIN EVANS, FREDDIE MCCLURE, JOHN ROEHM, GARY SHERMAN, STEPHEN STERRETT, BRIAN TOUHY, AIRXL, LLC, EXCEL 2, LLC, EXCEL 3, LLC, EXCEL 4, LLC, CJ1, LLC, INDY BRAVO, LLC, and BRAVO II, LLC, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND GRANTING THE PETITION FOR ENFORCEMENT

This matter is before the Court on the Federal Aviation Administration's ("FAA") Petition for Enforcement of Administrative Subpoenas. (Filing No. 1.)  Dan Elwell, Acting Administrator of the FAA,  ("Elwell") filed a Petition for Enforcement of sixteen administrative subpoenas served on August 9, 2018 on Respondents Aasif Bade, Brad Cable, Trevor Gray, Benjamin Evans, Freddie McClure, John Roehm, Gary Sherman, Stephen Sterrett, Brian Tuohy, AirXL, LLC, Excel 2, LLC, Excel 3, LLC, Excel 4, LLC, CJ 1, LLC, Indy Bravo, LLC, and Bravo II, LLC (collectively, the "Respondents").  The Court referred the petition to the Magistrate Judge (Filing No. 20), who submitted a Report and Recommendation on June 28, 2019, recommending that the Court grant the FAA's Petition (Filing No. 21).  Respondents timely filed an objection to the Report and Recommendation. (Filing No. 22.)  For the reasons set forth below, the Court **overrules** the Respondents' Objection and **adopts** the Report and Recommendation, **granting** Enforcement of the Administrative Subpoenas.

# I.   BACKGROUND

The facts of this case are accurately described in the Magistrate Judge's Report and Recommendation, (Filing No. 21), and thus are repeated in this Entry. Since approximately 2008, Respondents have collectively operated AirXL, LLC (hereinafter "AirXL"), a private air carrier service that utilizes seven Cessna Citations jet aircrafts. In 2013, the FAA received complaints about AirXL's operations and began investigating the Respondents for potential past and continuing violations of FAA regulations. Specifically, the FAA believed that the Respondents had failed to obtain proper authorization for the air-carrier service and thereby avoided mandatory safety requirements. (Filing No. 4 at 2.)

On March 23, 2014, the FAA issued a set of administrative subpoenas to various individuals and limited liability companies ("LLCs") regarding AirXL's operations. (Filing No. 12 at 2.) The Respondents jointly responded to these subpoenas and ultimately produced over 2,000 pages of documents. (Filing No. 12 at 2-3.) On October 28, 2014, counsel for AirXL and the FAA held a meeting where the FAA raised its concerns and had a discussion with respect to AirXL's operations.

On July 26, 2017, AirXL's counsel and FAA attorney Brendan Kelly ("Kelly") met again. At the conclusion of this meeting, the FAA asked AirXL to prepare a "white paper" or memorandum addressing the inapplicability of Federal Aviation Regulation Parts 91K and 135 to AirXL's operations. (Filing No. 12.) AirXL delivered the white paper to the FAA on August 15, 2017. On October 17, 2017, the parties met again, and during this meeting attorney Kelly stated at the time the FAA could not shut AirXL down.

On December 14, 2017, the FAA issued another set of administrative subpoenas to various individuals and LLCs it believed might have information about AirXL's operations. (Filing No. 4 at 3.) Some recipients of the 2017 Subpoenas produced aircraft flight logs, flight summaries,

2

aircraft lease agreements, pilot payrolls, and operating invoices in response. *Id.* The FAA took depositions of six individuals from late 2017 to early 2018, but deposed none of the Respondents.

On August 9, 2018, the FAA served a third set of administrative subpoenas to the Respondents (the "2018 Subpoenas"). The 2018 Subpoenas "required production of all documents, from January 1, 2015 to the present, in Respondents' possession related to their respective agreements associated with their use, ownership, and/or leasehold interest in the Cessna Citations under investigation." (Filing No. 4 at 5.) On August 31, 2018, the Respondents objected to the 2018 Subpoenas in their entirety and, to date, have not produced any documents in response.

The FAA, by its Acting Administrator Dan Elwell, filed a Petition for Enforcement of Administrative Subpoenas on February 27, 2019, requesting that this Court enforce the 2018 Subpoenas. (Filing No. 1.) On April 18, 2019, the Respondents filed a Motion to Quash Administrative Subpoenas, (Filing No. 12), asserting in the opening paragraph that their motion serves as a response in opposition to the FAA's Petition. Because the Motion to Quash was filed on the deadline for a response to the Petition for Enforcement, and the arguments are in direct response to the FAA's Petition, the Court will treat the Respondents' Motion as a response brief.[1] The Petitioner filed a reply brief on April 25, 2019. (Filing No. 13.)

The Respondents then attempted to file a reply brief in support of their Motion to Quash Administrative Subpoenas on May 2, 2019, (Filing No. 14); however, the Court deemed that the Motion to Quash, Filing No. 12, is a response brief, to which Elwell filed a Reply, (Filing No. 13), and therefore the Respondents' filing titled "Reply" is more appropriately considered a Surreply to

---

[1] Additionally, under S.D. Ind. Local Rule 7-1(a), a "motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court." The Court did not order the Respondents to file a Motion to Quash within their response to the FAA's Petition.

the FAA's Petition.  Because the Respondents did not seek leave of court to file such a surreply, the Court will not consider it when ruling on the FAA's Petition.

Respondents' request for oral argument was referred to the Magistrate Judge and the parties presented oral argument before the Magistrate Judge on June 26, 2019.  The Court also referred the Petition for Enforcement of Administrative Subpoenas  to the Magistrate Judge for a Report and Recommendation. (Filing No. 20.) The Magistrate Judge filed her Report and Recommendation on June 28, 2019, recommending the Court grant the FAA's Petition for Enforcement of Administrative Subpoenas, (Filing No. 21).  Thereafter, Respondents filed a timely Objection to the Report and Recommendation, asserting that the Magistrate Judge did not address the argument that the FAA's "irregular, six-year investigation is motivated by an improper purpose" and that the Magistrate Judge did not take into account the "burdensome and disruptive effect that the FAA'S abusive investigation has had on AirXL's business operations" when determining if the 2018 Subpoenas were unduly burdensome.  (Filing No. 22 at 1-2.)

## II.   LEGAL STANDARD

### A.   Report and Recommendation

A district court may assign dispositive motions to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition, including any proposed findings of fact.  *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009).  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).  "The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to adopt, reject, or modify it." *Schur*, 577 F.3d at 760. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  After a magistrate judge makes a report and recommendation, either party may object within fourteen days.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

A motion to enforce a subpoena is generally viewed as a non-dispositive matter. *E.E.O.C. v. Trinity Health Corp.,* 107 F. Supp. 3d 934, 936 (N.D. Ind. 2015). Where there is no pending underlying action before a court, however, the order on whether to enforce the subpoena would be dispositive of the entire matter. *Id*; *E.E.O.C. v. Dolgencorp.,* No. 07 C 6672 (N.D. Ill. Apr. 15, 2008) (citing *N.L.R.B. v. G. Rabine & Sons, Inc.,* No. 00 C 5965, 2001 WL 1772333, at *3 (N.D. Ill. Sept. 10, 2001). Therefore, the present motion is a dispositive matter, and this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The court's review of a magistrate judge's report and recommendation on a dispositive motion is *de novo*. 28 U.S.C. § 363(b)(1)(B); Fed. R. Civ. P. 72(b)(3). "The court may, however, defer to those conclusions to which timely objections have not been raised by a party." *Rackemann v. LISNR, Inc.*, No. 1:17-cv-00624-TWP-MJD, 2018 WL 4574342, at *3 (S.D. Ind. Sept. 24, 2018). "Under *de novo* review, the Court is free to accept, reject, or modify the recommended disposition." *Directv, LLC v. Spina*, No. 1:15-cv-00104-JMS-TAB, 2016 WL 3097212, at *1 (S.D. Ind. June 3, 2016). The "Court is essentially functioning as an appellate court in this context. Thus, even under *de novo* review, 'arguments not made before a magistrate judge are normally waived.'" *Id.* (quoting *United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000)).

**B.   <u>Enforcement of Subpoenas</u>**

Subpoena enforcement proceedings are designed to be summary in nature. *E.E.O.C. v. Aerotek, Inc.,* 815 F.3d 328, 333 (7th Cir. 2016); *E.E.O.C. v. United Airlines, Inc.*, 287 F.3d 643, 649 (7th Cir. 2014). A district court must enforce an administrative subpoena if (a) the matter under investigation is within the authority of the issuing agency, (b) the information sought is reasonably relevant to that inquiry, and (c) the requests are not too indefinite. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950) (addressing a court's limited role in the enforcement

of an administrative subpoena); *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 233 F.3d 981, 986-87 (7th Cir. 2000) (discussing court's exercise of "only limited review" in deciding enforcement of agency subpoenas).

Under this formulation, known as the *Morton Salt* test, the Court may still restrict disclosure of information "where [disclosure] would impose an unreasonable or undue burden on the party from whom production is sought." *Aerotek*, 815 F.3d at 333. "[C]ourt assessments of whether disclosure would be burdensome and of what restrictions might be appropriate are decisions within the sound discretion of the trial court." *Dow Chem. Co. v. Allen*, 672 F.2d 1262, 1267 (7th Cir. 1982). A subpoena will not be enforced if the demand is excessively burdensome, *i.e.*, if compliance would threaten the normal operation of a respondent's business. *E.E.O.C. v. Quad/Graphics, Inc.*, 63 F.3d 642, 45 (7th Cir. 1995).

### III.    DISCUSSION

The FAA's 2018 Subpoenas request information as follows:[2]

| |
|---|
| **From Respondents Bade, Gray, Evans, McClure, Roehm, Sterrett, Tuohy, and Evans, Sherman:** |
| **For the period January 1, 2015 to the present:** <br><br> Any and all records, in your custody and control including but not limited to the following; emails, correspondence, notes, reports, logbooks, manuals, diaries, documents, and/or photographs, including all written, printed, typed, computerized, programmed or graphic documents of any kind or nature related in any manner to: <br><br> 1. Pilot Services Agreement, or any such similar agreement, pertaining to your use of N170SD; N884B; N525LE; N80X; N469DE, N550HJ, N562PC, and/or NI7ED. <br><br> 2. LLC Interest Purchase Agreement and/or LLC Interest Purchase Agreement and Amendment to Operating Agreement, or any such similar agreement, pertaining to your use of N170SD; N884B; N525LE; N80X; N469DE; N550HJ; N562PC, and/or N17ED. |
| **From Respondent Cable:** |

---

[2] The following chart is taken directly from the Petitioner's Brief (Filing No. 4), because it outlines the information requested from each party in the 2018 Subpoenas in a more efficient manner than the Court could achieve by making a separate chart.

| |
|---|
| **For the period January 1, 2015 to the present:**<br><br>Any and all records, in your custody and control including but not limited to the following; emails, correspondence, notes, reports, logbooks, manuals, diaries, documents, and/or photographs, including all written, printed, typed, computerized, programmed or graphic documents of any kind or nature related in any manner to:<br><br>1. Master Interchange Lease Agreement, or any such similar agreements, related to the use of N170SD; N884B; N525LE; N80X; N469DE, N550HJ, N562PC, and/or NI7ED. |
| **From Respondents AirXL, LLC; Excel 2, LLC; Excel 3, LLC; Excel 4, LLC; CJ 1, LLC; Indy Bravo, LLC; Bravo II, LLC:** |
| **For the period January 1, 2015 to the present:**<br><br>Any and all records, in your custody and control including but not limited to the following; emails, correspondence, notes, reports, logbooks, manuals, diaries, documents, and/or photographs, including all written, printed, typed, computerized, programmed or graphic documents of any kind or nature related in any manner to:<br><br>1. Master Interchange Lease Agreement, or any such similar agreements, related to the use of N170SD; N884B; N525LE; N80X; N469DE, N550HJ, N562PC, and/or NI7ED.<br><br>2. Operating Agreements, or any such similar agreements, related to the use of N170SD;N884B; N525LE;N80X; N469DE,N550HJ,N562PC, and/or N17ED. |

The FAA argues that this Court should enforce the 2018 Subpoenas because they pass the *Morton Salt* test, namely that the requests are within the authority of the agency, not too indefinite, and reasonably relevant to the investigation.  Additionally, the FAA contends the subpoenas are not unreasonable or unduly burdensome.  Respondents assert that the 2018 Subpoenas fail the *Morton Salt* test, arguing generally that the requests are burdensome, duplicative, and serve an illegitimate purpose.  Just as the Magistrate Judge's Report and Recommendation did, the Court will address each element of the *Morton Salt* test and then consider whether the requests are unreasonable and unduly burdensome.

**A.**    <u>**The 2018 Subpoenas are within the authority of the FAA.**</u>

The FAA argues the 2018 Subpoenas are squarely within the authority of the FAA.  The FAA states it has the authority to regulate the operations of the Cessna Citations under the Federal

Aviation Regulations. As outlined in 49 U.S.C. § 46101(a)(1), if the FAA receives a complaint from a person, it "shall investigate the complaint if a reasonable ground appears." Additionally, the FAA may, on its own initiative, "conduct an investigation, if a reasonable ground appears." 49 U.S.C. § 46101(a)(2). Under 49 U.S.C. § 46104, "[i]n conducting a hearing or investigation," the FFA may "subpoena witnesses and records related to a matter involved in the hearing or investigation," 49 U.S.C. § 46104(a)(1), and may bring a petition in federal court to enforce its subpoenas. 49 U.S.C. § 46104(b). The FAA argues that, pursuant to these sections, it has the authority to issue subpoenas and take testimony as part of its investigation into an alleged illegal on-demand air carrier operation involving the Cessna Citations. The FFA concludes that since its investigation of the Respondents seeks information about whether AirXL has violated or is continuing to violate FAA safety regulations, the 2018 Subpoenas fall squarely within their authority.

The United States Supreme Court has noted that administrative agencies like the FAA have broad "power[s] of inquisition" and a legitimate right to satisfy themselves that corporate behavior is consistent with the law and public interest. *Morton Salt Co.*, 338 U.S. at 642–43, 652. Thus, the FAA may investigate a business entity "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Aerotek, Inc.*, 815 F.3d at 333 (citing *Morton Salt Co.*, 338 U.S. at 642–43). The agency does not need to bring formal charges to justify its investigative authority. *See id.*

The Respondents do not contend that the FAA lacks authority to regulate aviation, but rather the FAA in this particular instance is abusing that authority. (Filing No. 24.) AirXL acknowledges that the subject matter of the subpoenas at issue is ordinarily within the FAA's purview, but states these particular subpoenas are being used in an improper fashion in furtherance of an improper investigation. The Respondents assert the investigation has surpassed the

8

"normative deadline" established by the FAA's own guidelines, the "stale complaint rule" bars any certificate enforcement proceedings, and the statute of limitations prevents any civil enforcement action against AirXL.

The "normative deadline" recognized by Respondents comes from FAA Order 2150.3B, Chapter 4, which states, "[o]n average, FAA investigative personnel in field offices [should] strive to complete an investigation ... within 75 days of the date they know of the apparent violation." *Id.* Ch. 4 Sec. 4(e).[3]   However, the introduction paragraph to chapter four states "this chapter provides general guidelines for conducting an investigation.  These guidelines are not all inclusive and are not a substitute for common sense and good judgment.  Each investigation is tailored to the specific apparent or potential violation."  Order 2150.3B, Ch. 4, Sec. 1.  Based on these policies within FAA Order 2150.3B, the 75-day "normative deadline" does not affect the FAA's authority to bring this Petition as each investigation is different.

Furthermore, Respondents' reliance on the "stale complaint rule" is inappropriate.  This rule, also found in FAA Order 2150.3B, Chapter 4, states:

> [A]n FAA complaint (order) may generally be dismissed if the offenses alleged occurred more than six months prior to the Administrator's advising a respondent of the reasons for the proposed action. Advising the respondent refers to the respondent's receipt of the legal document sent by FAA legal counsel proposing the certificate action.

FAA Order 2150.3B, Ch. 4, Sec. 5.  First and foremost, this rule is also subject to the same limiting language previously discussed, found in the introduction paragraph.  Moreover, this section only applies to "[c]ases involving the suspension or revocation of airman, type, production,

---

[3] As the Report and Recommendation noted, FAA Order 2150.3B was superseded by FAA Order 2150.3C in September 2018, but Respondents assert that "for the period of time relevant to this action FAA Order 2150.3B was the operative version of FAA Policy." (Filing No. 12 at 8, n. 2.) However, later in Respondents' Arguments they rely on FAA Order 2150.3C without explaining why FAA Order 2150.3B is no longer relevant. The Court will discuss FAA Order 2150.3B here.

airworthiness, air carrier operating, airport operating, air agency and air navigation facility certificates." As the FAA's investigation does not seek the revocation or suspension of certificates, the stale complaint rule does not apply here.

The final argument the Respondents make in regard to the FAA's abuse of authority concerns the statute of limitations for bringing an enforcement action. Respondents contend the time for bringing an enforcement action has "long since lapsed," citing FAA Order 21503.B again, claiming it establishes a five-year statute of limitations on any civil enforcement actions. Respondents thus argue since this investigation has progressed into its sixth year, the FAA is barred. The FAA argues that the Respondents are "engaged in a *continuing* violation that accrues anew every day they are out of compliance," thereby continually extending the statute of limitations. (Filing No. 13 at 8).

As stated in the Report and Recommendation, "whether the statute of limitations has run on the FAA's ability to file a civil enforcement action has no bearing on whether the FAA may continue to investigate possible violations." Both the Supreme Court and the Seventh Circuit have expressly determined the FAA may conduct an investigation to assure itself that its regulations are being followed, regardless if it ultimately determines civil enforcement or formal charges are not warranted. Furthermore, the FAA's contention that the Respondents are engaged in a continuing violation of its safety regulations renders the Respondents' argument meritless.

The FAA received several complaints about the Respondents/AirXL and subsequently opened an investigation into them. Under 49 U.S.C. § 46104, the FAA has the authority to issue subpoenas and take testimony in accordance with its investigation. Therefore, the Court agrees with the Report and Recommendation in the finding that the FAA's investigation into AirXL falls within the agency's authority. The FAA has broad powers to investigate the operations of AirXL,

and the Respondents have not demonstrated that the FAA has surpassed the boundaries of those powers.

**B.**     <u>**The 2018 Subpoenas are not too indefinite.**</u>

The FAA maintains that the 2018 Subpoenas are not too indefinite, stating they clearly define the information they seek and are more narrowly tailored than the two prior rounds of administrative subpoenas. The Respondents do not directly address this step of the *Morton Salt* test. The Report and Recommendation did address it "for the sake of completeness."  The Court agrees with the determination of the Report and Recommendation.

When analyzing whether an administrative subpoena is too indefinite, the Court should look to whether the subpoenas "list[ed] in sufficient detail the information requested." *E.E.O.C. v. Quad/Graphics, Inc.*, 868 F. Supp. 1078, 1081 (E.D. Wis. 1994). In 2017, as a part of its investigation, the FAA issued several administrative subpoenas seeking documents related to twenty different categories of information important to the investigation.  (Filing No. 4-2.)  After reviewing the documents the FAA received, it served "narrower administrative subpoenas to the sixteen Respondents on August 9, 2018."  In sum, the subpoenas required production of all documents from January 1, 2015, to the present in Respondents' possession related to their respective agreements associated with their use, ownership, and/or leasehold interest in the Cessna Citations under investigation. The FFA claims "this narrow category of information is approximately one twentieth of the information demanded in the… December subpoenas." (Filing No. 4.)

The 2018 Subpoenas sufficiently identify, define and limit the information the FAA sought. They seek information related to "Pilot Service Agreements," "LLC Interest Purchase Agreements," "Master Interchange Lease Agreements," and "Operating Agreements".  Moreover, the information requested is limited to the seven Cessna Citation airplanes under investigation and

to the time period of "January 2015 to the present."  As such, the Court determines that the 2018 Subpoenas are not too indefinite.

**C.**  **The information sought by the 2018 Subpoenas is reasonably relevant to the FAA's investigation.**

The Petitioner argues that the 2018 Subpoenas are reasonably relevant to the FAA's investigation into AirXL's operations because they seek information about AirXL's business structure, and the agreements associated with Respondents' use, ownership, and leasehold interests in the airplanes being investigated.  The Respondents do not specifically challenge the relevance of the 2018 Subpoenas, but instead focus again on an improper purpose argument. The Respondents argue that the FAA has improperly restarted an investigation into AirXL without a legitimate purpose, thereby harassing the Respondents and disrupting their business.

Objections to the relevance of administrative subpoenas must be considered in the context of agencies' broad powers to investigate on suspicion that their regulations are being violated.  *See Aerotek, Inc.,* 815 F.3d at 333.  As mentioned above, the FAA may investigate violations so long as there are "reasonable grounds." 49 U.S.C. § 46101(a).  Accordingly, the threshold for relevance of administrative subpoenas is relatively low.  *Aerotek, Inc.*, 815 F.3d at 333–34.  Courts, however, also have an obligation to make sure that agencies do not exceed their authority and must make sure requests have "not been made for an illegitimate purpose."  *E.E.O.C. v. Quad/Graphics,* 63 F.3d 642, 645 (7th Cir. 1995).

The first question the Court must answer is whether the 2018 Subpoenas are reasonably relevant to the FAA's investigation.  The investigation started when the FAA received complaints regarding an alleged illegal on-demand air carrier operation involving the seven Cessna Citations.  Specifically, the FAA began investigating whether the Cessna Citations had been properly authorized to operate under 14 C.F.R. part 119, and 14 C.F.R. part 135.  The FAA stated by failing

12

to obtain proper authorization under FAA regulations, the various owners and/or leasehold interest holders in the Cessna Citations may have avoided mandatory safety requirements, such as additional training and oversight requirements for pilots, and maintenance requirements. (Filing No. 4). As discussed above, the 2018 Subpoenas demand production of "all documents, from January 1, 2015 to the present, in Respondents' possession related to their respective agreements associated with their use, ownership, and/or leasehold interest in the Cessna Citations under investigation."  (Filing No. 21 at 2, 5-6.)  This makes the 2018 Subpoenas directly relevant to the FAA's current investigation.

The second question the Court must consider is whether or not the 2018 Subpoena requests were made by the FAA for an improper purpose. *Quad/Graphics*, 63 F.3d at 645. Respondents maintain that the FAA's 2018 Subpoenas are a part of a "never-ending investigation" designed to be "unduly burdensome and disruptive to AirXL's operations." (Filing No. 22 at 6.) They state the "obvious purpose of these requests is to bury AirXL under the burden and expense of this investigation" and "investigate [Respondents] into submission."  Respondents allege the FAA's handling of the depositions "demonstrates the impropriety of the investigation," claiming the FAA "entirely disregarded" 49 U.S.C. § 46104(c).  They cite specifically to section (3) which states,

> Before taking a deposition, the party or the attorney of the party proposing to take the deposition must give reasonable notice in writing to the opposing party or the attorney of record of that party. The notice shall state the name of the witness and the time and place of taking the deposition.

The Respondents allege the FAA not only refused to provide the required notice to AirXL about the six depositions they took, but also actively barred AirXL's counsel from attending those depositions, thus "depriving AirXL of its due process rights."

The FAA argues the Respondents misunderstand 49 U.S.C. § 46104(c), stating it does not require them to provide notice to Respondents and their counsel of various investigative

depositions. Instead, the FAA reiterates the statute's notice requirement applies only to "the opposing party or the attorney of record of that party" and alleges that the investigation has no "record". Because the Respondents are the "target" of the investigation, and are not the ones being deposed nor counsel to those being deposed, the FAA states "Respondents have no statutory right to receive notice of third-party depositions." (Filing No. 23 at 9.) The Court agrees with the FAA's argument. The FAA also notes that "failing to receive notice of one or more depositions does not prove that the FAA's investigation is a sham," and has "nothing to do with the enforceability of the Subpoenas or the motive of the FAA in conducting this investigation." The Court also agrees with this. Courts have an obligation to make sure agencies do not exceed their authority or make requests have "for an illegitimate purpose." *Quad/Graphics,* 63 F.3d at 645. Even if the FAA *was* required to give notice to Respondents of the depositions, or allow the Respondents' counsel to attend the third-party depositions, it would not mean the 2018 Subpoenas were made for an illegitimate purpose and thus would not dismantle the "reasonably relevant" requirement.

The standard for relevance of administrative subpoenas is exceedingly low and extremely deferential to the agency involved. The Court agrees with the Magistrate Judge that the Respondents have failed to support their allegations of illegitimacy with any evidence. The 2018 Subpoenas were requested as part of an ongoing investigation of AirXL based on several complaints regarding an alleged illegal on-demand air carrier operation involving the seven Cessna Citations. They requested production of all documents in Respondents' possession related to their respective agreements associated with their use, ownership, and/or leasehold interest in the Cessna Citations under investigation. Because of this and the reasons stated above, the Court finds the 2018 Subpoenas were relevant to the investigation and were not made for an illegitimate or improper purpose. The 2018 Subpoenas thereby pass all three elements of the *Morton Salt* test.

**D.      The 2018 Subpoenas are not unreasonable or unduly burdensome**

Since the Court is satisfied that the administrative subpoenas are within the FAA's authority, not too indefinite, and reasonably relevant to the FAA's investigation, the Court will now address whether the requests are unreasonable or unduly burdensome. *See Aerotek*, 815 F.3d at 334. The party resisting compliance with the subpoenas bears the burden of demonstrating unreasonable or undue burden, and "speculation is inadequate to establish undue burden." *Id*. To establish that the administrative subpoenas are excessively burdensome, the party resisting compliance "must show that compliance would threaten the normal operation of its business." *Id*.; *accord Quad/Graphics*, 63 F.3d at 645. Thus, in this matter, the burden falls on the Respondents. "The burden of showing that the request is unreasonable . . . is not easily met where . . . the agency inquiry is pursuant to a lawful purpose and the requested documents are relevant to that purpose." *Dow Chem.,* 572 F.2d at 1267 (alterations in original) (quoting *F.T.C. v. Texaco, Inc.,* 555 F.2d 862, 882 (D.C. Cir. 1977)).

### 1.     The 2018 Subpoenas are unduly burdensome

The Respondents object to the Report and Recommendation's finding that the 2018 Subpoenas are not excessively burdensome. Respondents contend the Magistrate Judge overlooked evidence in the record that "shows that this investigation has been profoundly burdensome to the extent that it has driven AirXL to restructure its operations under the far more burdensome and expensive regulations of 14 C.F.R. part 119 and 14 C.F.R. part 135." (Filing No. 22 at 6.) Respondents argue this choice was necessitated by the years-long FAA investigation and the FAA's "abusive" investigation tactics, and state it was done to "abate the punitive costs of the FAA's investigation."

Respondents have the burden to prove with admissible evidence that "production of the information" requested in the subpoena would threaten the normal operation of its business. *Aerotek,* 815 F.3d at 334. The controlling legal standard concerns the cost of producing

information, not the cost of implementing a new business model to comply with additional regulations. Furthermore, Respondents' contention is unsupported by any evidence. Respondents have not offered any evidence that making this purported change will interfere with their business operations, prove too costly, or otherwise harm them. The Respondents' objection has no legal basis and, regardless, could not be sustained without any admissible evidence supporting it. Thus, the 2018 Subpoenas do not impose an undue burden on the Respondents.

As an additional note, the Respondents did not develop this argument fully before the Magistrate Judge. Even under *de novo* review, arguments not made before a magistrate judge are normally waived. *Directv, LLC,* 2016 WL 3097212, at *1. The Respondents did not state in prior briefings that they had definitively decided to restructure their operations, as they did in their Objection to the Report and Recommendation. Respondents' argument is thus new, and the Court could consider it to have been waived if it had not already determined the 2018 Subpoenas did not impose an undue burden on the Respondents.

2.    **The 2018 Subpoenas are unreasonable**

The Respondents next address the alleged unreasonableness of the 2018 Subpoenas, reiterating their argument that the FAA's investigation is motivated by an improper purpose. Respondents' Objection recites their prior argument that the FAA departed from its own internal guidelines and abused their power by not completing their investigation within 75 days, stating this is "probative of the lack of reasonableness." Respondents claimed that "[c]ontrary to the forthright acknowledgement of this obligation, the Report and Recommendation did not engage in a sufficient analysis of the improper purpose that is being served by the FAA's investigation." (Filing No. 22 at 3.) The Report and Recommendation discussed how neither FAA Order 2150.3B nor FAA Order 2150.3C limit the FAA's authority to conduct investigations, stating that "[e]ven though the FAA has not completed its investigation within 75 days, a fact which may frustrate the

16

Respondents, that does not make the 2018 Subpoenas irrelevant to the investigation or render the investigation itself illegitimate." (Filing No. 21 at 12.) The Court agrees with the Report and Recommendation.  As previously noted, the guidelines Respondents claim the FAA departed from are just that—guidelines. The language of the FAA policies is clearly self-limiting on the mandatory nature of the Order itself.

The Respondents then refocus on their argument regarding the five-year statute of limitations claiming this also bears on the reasonableness of the FAA's efforts.  Respondents allege "there is no good cause exception that would excuse the FAA's failure to timely bring any eventual claims."  (Filing No. 22 at 5.)  They state that "insofar as such claims accrued outside of that time period, such claims will never be actionable, and the FAA's dogged pursuit is therefore unreasonable."  The Respondents continue, stating "[e]ven if the FAA's unsupported assertion that AirXL is engaged in a '*continuing* violation' sidesteps the statute of limitations issue, that allegation is irreconcilable with the sworn statement of FAA counsel Kelly that there was no actionable violation as of November, 2017…" *Id*. at 5-6 (emphasis in original).  FAA counsel Kelly made a statement in November 2017 that "there was no actionable violation as of November 2017" to shut down AirXL.  However, the FAA points out that Kelly stated the FAA *at that time* did not have sufficient information to bring a civil enforcement action and says this is due to the fact that the investigation was not complete.  (Filing No. 13.)  The FAA also notes that "delay is not proof of improper purpose. This is a complex investigation; and Respondents have contributed to the delay" by not responding to the 2018 Subpoenas.  (Filing No. 23 at 13.)  They further state "the FAA is not investigating stale claims.  The FAA believes that Respondents may be engaged in continuing violations," therefore the statute of limitations restarts every day.  *Id.*  As the Court previously stated, the statute of limitations is inapplicable here.

The Respondents also argue the FAA disregarded its internal guidelines to "apprise [Respondents] of the agency's position in a timely manner" and claim this demonstrates bad faith. (Filing No. 22 at 5.)  They allege "the FAA's contradictory statements regarding the extent to which it has engaged with AirXL in good faith" is evidence of the unreasonableness.  *Id.*  Respondents cite Order 2150.3B Ch. 2. Sec. 3(g) which states "fairness . . . requires good faith efforts to understand the apparent violator's position and to take it into account, as well as to apprise the apparent violator, of the agency's position in a timely manner" and assert that, despite the FAA's claims that it has kept AirXL reasonably apprised consistent with their guidelines, they have not. Pursuant to the Objection, the Respondents state the only citation for this claim is the white paper that AirXL prepared for the FAA.  The white paper was delivered to the FAA in 2017, and the Respondents point out that the FAA has never responded to its analysis and still refuses to discuss the progress and reason for its investigation.

The FAA contends the Magistrate Judge properly disposed of this argument, claiming "Respondents are fully aware that 'the agency's position' is that Respondents may be illegally operating seven Cessna Citation jet aircraft[s] without the proper certification, thereby avoiding mandatory safety requirements."  The FAA asserts the white paper from August 15, 2017 proves that Respondents understand which regulations are at issue and what the FAA's position is.  Thus, they state no further evidence is necessary to confirm that Respondents have been apprised of the agency's position in a timely manner.  However, the FAA does offer further evidence that Respondents' counsel and the FAA met on October 17, 2017, that the Respondents are aware the FAA conducted depositions of other individuals, and that Respondents themselves have described other meetings and communications between the FAA and Respondents. (*see* Filing No. 12.) Additionally, the FAA provides evidence that they did respond to Respondents' white paper on May 21, 2018.  (Filing No. 23-1.)

The FAA states they "cannot say much more because its investigation is not complete." Further, they correctly state "full disclosure of the details about the agency's position regarding an incomplete investigation would require disclosure of agency work product and information protected by the deliberative process privilege." *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374 (7th Cir. 2004) (stating deliberative process privilege applies "to predecisional policy discussions and to factual matters inextricably intertwined with such discussions"); *Barmes v. I.R.S.*, 60 F. Supp. 2d 896, 901 (S.D. Ind. 1998) (explaining that the attorney work-product privilege applies to communications between "an agency decision maker and other agency attorneys" along with documents prepared by the agency "in anticipation of foreseeable litigation"). The deliberative process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery… and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them…." *Id.* (quoting *Dep't of interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001)). The Court determines that the FAA has engaged the Respondents in good faith and kept them reasonably apprised of the agency's position. As such, the 2018 Subpoenas were not unreasonable, nor did they impose an undue burden on the Respondents.

### 3. Respondents' potential *laches* defense

As a final note, the Respondents claim should the statute of limitations prove unavailing, which this Court has determined it has, then there remains a basis for AirXL to assert a *laches* defense if the FAA ever brings an enforcement action. *Manin v. Nat. Transp. Safety Bd.*, 627 F.3d 1239 (D.C. Cir. 2011) ("the laches defense may be available even when the stale complaint rule is inapplicable"). *Laches* is "an equitable defense that applies where there is (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Id.* at 1242. The Respondents state "it would be manifestly unjust for the FAA to allow AirXL to

accrue thousands of dollars' worth of potential liability during the same time frame in which it refused to cooperatively engage with AirXL to resolve any issues." They conclude since,

> [L]aches is a defense that could bar future claims, the Court should presently consider these facts as they bear on the unreasonableness of the FAA's petition to enforce the present subpoenas. It would multiply the wrong done to AirXL to require it to wait for the FAA to finally act before it was allowed to submit its laches argument for review.

(Filing No. 22 at 6).

First, the Respondents did not develop this argument fully before the Magistrate Judge. As stated before, even under *de novo* review, arguments not made before a magistrate judge are normally waived. *Directv, LLC,* 2016 WL 3097212, at *1. The Court therefore can consider the Respondents' *laches* defense as waived.

Additionally, Respondents cannot receive "the benefit of a laches defense when [they] make only 'conclusory allegations ... that delay has adversely affected [their] ability to locate witnesses or produce evidence,' because such allegations are 'insufficient to establish that [Respondents] ha[ve] in fact been prejudiced. . . .'" *Manin*, 627 F.3d at 1242 (quoting *Adm'r v. Peterson*, 6 N.T.S.B. 1306, 1307 n.8 (1989). Respondents have failed to establish any prejudice that would support a laches defense.

As the Second Circuit noted, the federal "[c]ourts have imposed few constitutional limitations on agencies' power to issue administrative subpoenas." *In re McVane*, 44 F.3d 1127, 1134 (2d Cir. 1995). The FAA's 2018 Subpoenas were issued pursuant to an investigation within the authority of the FAA, are not too indefinite, are reasonably relevant to that investigation and were not requested for an illegitimate or improper purpose, thus satisfying the *Morton Salt* test. Further, the 2018 Subpoenas are not unreasonable or unduly burdensome on Respondents. Accordingly, the Court **adopts** the Magistrate Judge's Report and Recommendation that the FAA's Petition for Enforcement of the 2018 Administrative Subpoenas should be granted.

## IV.   <u>CONCLUSION</u>

The Court finds no error of law or fact in the Report and Recommendation and therefore

**OVERRULES** the Respondents' Objection (Filing No. 22).  For the reasons set forth above, the

Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation (Filing No. 21), and

the Federal Aviation Administration's Petition for Enforcement of Administrative Subpoenas

(Filing No. 1) is **GRANTED** and this action is **TERMINATED**.

      **SO ORDERED.**

Date:  6/16/2020

                                       TANYA WALTON PRATT, JUDGE
                                       United States District Court
                                       Southern District of Indiana

DISTRIBUTION:

Justin R. Olson
UNITED STATES ATTORNEY'S OFFICE
justin.olson2@usdoj.gov

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE
shelese.woods@usdoj.gov

Timothy J. Maher
BARNES & THORNBURG
tim.maher@btlaw.com